UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TIMOTHY SAVAGE,                    )
                                   ) No. CV-05-362-CI
          Plaintiff,               )
                                   ) ORDER GRANTING PLAINTIFF'S
v.                                 ) MOTION FOR SUMMARY JUDGMENT
                                   ) AND DIRECTING AN IMMEDIATE
JO ANNE B. BARNHART,               ) AWARD OF BENEFITS
Commissioner of Social             )
Security,                          )
                                   )
          Defendant.               )
                                   )

        BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec. 9, 13) submitted for disposition without oral argument on May
8, 2006.  Also before the court is Defendant's Motion to file an
overlength brief.  (Ct. Rec. 12.)  Attorney Rebecca M. Coufal
represents Plaintiff; Special Assistant United States Attorney
Franco L. Becia represents Defendant.  The parties have consented to
proceed before a magistrate judge.  (Ct. Rec. 3.)  After reviewing
the administrative record and the briefs filed by the parties, the
court **GRANTS** Plaintiff's Motion for Summary Judgment and remands for
an immediate award of benefits.

1    Plaintiff, 58-year-old Vietnam veteran[1] at the time of alleged

2  onset date and 63-years-old at the time of the second administrative

3  decision following remand by the Appeals Council, completed 13 years

4  of education and had past work experience as a radiator mechanic for

5  25 years with the same employer.  Plaintiff filed an application for

6  Social Security disability benefits on March 28, 2001, alleging

7  disability as of November 17, 1999, due to physical and mental

8  impairments.  Following a denial of benefits at the initial stage

9  and on reconsideration, a hearing was held before Administrative Law

10  Judge Mary Bennett Reed (ALJ).  On July 25, 2002, the ALJ denied

11  benefits; the cause was remanded by the Appeals Council on June 25,

12  2003.  A supplemental administrative hearing was held; the ALJ

13  denied benefits on April 11, 2005.  Review was denied by the Appeals

14  Council.  This appeal followed.  Jurisdiction is appropriate

15  pursuant to 42 U.S.C. § 405(g).

16                       **ADMINISTRATIVE DECISION**

17    The ALJ concluded Plaintiff met the non-disability requirements

18  and was insured for benefits through December 31, 2004.  (Tr. at

19  57.) Plaintiff had not engaged in substantial gainful activity and

20  suffered from severe impairments, including musculoskeletal and

21  _____

22    [1]The record indicates Plaintiff, then 23-years-old, served as

23  a member of the Marine Corps infantry in Vietnam, saw significant

24  combat throughout his tour, witnessed the death and serious wounding

25  of 24 platoon members during Operation Hastings.  He was one of six

26  who survived without serious wounds and was awarded the Purple

27  Heart.  (Tr. at 158, 159.)  Plaintiff was discharged in 1969 for

28  medical reasons due to labile hypertension.  (Tr. at 151.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 2

1  visual limitations but those impairments were not found to meet the
2  Listings.  The ALJ found Plaintiff did not suffer from severe mental
3  impairments, and concluded Plaintiff's testimony was not fully
4  credible.  The ALJ determined Plaintiff had the residual capacity
5  for a wide range of light work with additional postural and visual
6  limitations.  (Tr. at 57.)  The ALJ concluded Plaintiff could return
7  to his past relevant work as a radiator mechanic and, therefore, was
8  not disabled.

9                              **ISSUES**

10      The question presented is whether there was substantial
11  evidence to support the ALJ's decision denying benefits and, if so,
12  whether that decision was based on proper legal standards.
13  Plaintiff contends the ALJ erred when (1) finding his mental
14  impairment was not severe, rejecting the opinions of the treating
15  psychiatrist and the Veteran's Administration's disability rating
16  and relying on the opinion of the consulting and examining mental
17  health experts; and (2) rejecting his testimony without clear and
18  convincing reasons.  Having concluded there was error with respect
19  to the first issue, the court does not address the second.

20                        **STANDARD OF REVIEW**

21      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the
22  court set out the standard of review:

23      The decision of the Commissioner may be reversed only if
        it is not supported by substantial evidence or if it is
24      based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
        1097 (9th Cir. 1999). Substantial evidence is defined as
25      being more than a mere scintilla, but less than a
        preponderance. *Id.* at 1098. Put another way, substantial
26      evidence is such relevant evidence as a reasonable mind
        might accept as adequate to support a conclusion.
27      *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
        evidence is susceptible to more than one rational
28      interpretation, the court may not substitute its judgment

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 3

for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

Plaintiff contends the ALJ erred when she concluded his mental impairments were not severe in light of the opinion of his treating psychiatrist, Dr. Edwards, and the 50% disability rating assessed by the VA for post traumatic stress disorder (PTSD).   Defendant responds the ALJ was correct in relying on findings by consultant Drs. Bostwick and Brown and examining psychologist, Dr. McKnight. Defendant maintains Dr. McKnight's findings were supported by his independent examination and Dr. Bostwick's findings were supported by other evidence in the record, including the treatment notes of the treating psychiatrist.   Moreover, Defendant argues, the ALJ gave clear and convincing reasons for rejecting Dr. Edwards' conclusions.

At step two of the sequential process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment, one which has more than a slight effect on the claimant's ability to work.   To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.   20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled.  *Corrao*

*v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Thus, the Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28). The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991). The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that

conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).   Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians.   *Andrews*, 53 F.3d at 1039.

    The ALJ rejected the conclusion by Dr. Edwards that Plaintiff was disabled due to PTSD, relying, instead, on the opinion of consulting psychologist Bostwick, who concluded, although the diagnosis was severe, the functional limitations (B criteria) were mild. (Tr. at 585, 593.)   There is some basis in the record to support this conclusion.   Clinic notes from the VA treating psychiatrist, an expert in combat related PTSD, note improvement with medication, at least in nighttime sleep patterns.  (Tr. at 260, 366, 353.)  Moreover, Plaintiff testified he has been active in the community, participating in Boy Scout and VFW activities and a men's church group, as well as volunteering to catalog veterans buried at the local cemetery.  (Tr. at 576, 579.)   Additionally, the record reflects he traveled successfully to Ireland for vacation and to the southwest to assist a friend with moving.  (Tr. at 219, 482.)  Those successes were reflected in findings by the examining physician, Dr. McKnight, and consultant Dr. Bostwick.   Dr. McKnight opined Plaintiff's PTSD was non-severe, his global assessment of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 7

functioning was measured at 65-70, and any limitations were mild. (Tr. at 173-179.)

PTSD is defined as,

[T]he development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity; or witnessing an event that involves death, injury, or threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate.... The person's response to the event must involve intense fear, helplessness, or horror.

AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS at 424 (4th ed. 1994) (DSM-IV).  Also associated with PTSD are the following diagnostic criteria:  Persistent avoidance of stimuli associated with the trauma as indicated by efforts to avoid activities, places, or people that arouse recollection of the trauma, feelings of detachment or estrangement from others, and restricted range of affect.  DSM-IV at 428.  Additionally, there must be persistent symptoms of increased arousal, including difficulty falling or staying asleep, irritability or outbursts of anger, difficulty concentrating, hypervigilance, and exaggerated startle response. DSM-IV at 428.  Dr. Bostwick admitted and the ALJ found neither he nor Dr. McKnight were experts in combat related PTSD, and that Dr. McKnight's opinion had not addressed Plaintiff's Vietnam experience in any detail.  (Tr. at 55, 515, 521, 523.)

There is no dispute Plaintiff's combat experience as a United States Marine during the Vietnam war met the criteria for PTSD.  The only question is whether that condition resulted in limitations that were disabling.  It is undisputed Plaintiff successfully held a job as a radiator mechanic with Seattle Transit/Metro for 25 years,

although he stated he self-medicated his symptoms during the first 15-20 years of work with alcohol, and routinely carried a gun for protection. (Tr. at 530, 531.) Following anger outbursts, he was sent by his employer to cultural diversity workshops. (Tr. at 530.) He testified the last year of his employment was very difficult because Asian employees and the influx of Asians in the Seattle urban area would trigger PTSD symptoms, including flashbacks, anger outbursts, and sleep deprivation which interfered with his concentration. (Tr. at 534, 535.) Plaintiff retired early in November 1999, a full year after being diagnosed by the VA with PTSD and awarded full disability benefits.[2]   As diagnosed by the VA psychiatrist in 1997, Plaintiff symptoms included sleep deprivation, emotional detachment, limited range of affect, and underlying tension resulting in moderately severe to severe PTSD. (Tr. at 162.)

After retiring, Plaintiff moved immediately from Seattle to a small farming community in Eastern Washington. He resumed psychiatric care through the Spokane VA, including quarterly psychiatric appointments with Dr. John Edwards and a two-year counseling program with a veterans group. During his entire treatment history with Dr. Edwards, Plaintiff's GAF ranged from 55 in February 2000 (Tr. at 205), to 65 and 57 in January 2001 (Tr. at 223, 430), 57 in June 2001 (Tr. at 257), 59 in February 2002 (Tr. at

---

[2]It also is interesting to note that Plaintiff had multiple coronary bypass surgery in 1995, yet returned to work for several more years, and had a successful work history notwithstanding legal blindness of his right eye. (Tr. at 150, 151.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 9

404), back to 53 in May 2002 (Tr. at 402), 52 in November 2002 (Tr. at 375), 53 in February 2003 (Tr. at 366), 58 in May and November 2003 (Tr. at 353, 447), 55 in December 2003 (Tr. at 396), 65 in April 2004 (Tr. at 482), and 60 in January 2004 (Tr. at 493). These scores suggest a range of moderate limitations. DSM-IV at 32. Additionally, Dr. Edwards opined in September 2004 Plaintiff would have moderate limitations in ability to remember locations and work-like procedures, understand, remember and carry out detailed instructions, perform activities within a schedule, sustain ordinary routine, and respond to changes in the work setting. He also noted Plaintiff would have marked limitations in attention and concentration, working in coordination with others, completing a normal work day, responding appropriately to criticism, getting along with peers and traveling in unfamiliar places. (Tr. at 505.) This is the only medical opinion as to Plaintiff's ability to function in the workplace, as opposed to socially or with respect to activities of daily living.

Dr. Bostwick was unable to provide an opinion whether an ability to function with respect to the B criteria (activities of daily living, social interaction, attention, concentration or pace, and episodes of deterioration, criteria at step two of the sequential process) would translate to success in occupational functioning. (Tr. at 593.) Dr. Bostwick also noted that stress in the workplace could result in difficulty with controlling anger as opposed to a non-work environment where retreat is possible. (Tr. at 593.) Certainly, in Plaintiff's case, there is evidence retreat has been an option he has relied upon to control symptoms. He retired early from his job, left his home city of 25 years, has

discontinued involvement with the VFW, does not maintain alumni contact with his VA counseling group, does not socialize with friends or as a member of a club, and tries to "stay busy," all in an effort to avoid triggering events.  (Tr. at 547.)  At the supplemental administrative hearing, Plaintiff testified he had been involved in a physical confrontation with a local judge who did not fly the American flag after September 11 attacks. (Tr. at 538.)  It is also undisputed when confronted with Vietnam memories or when he forgets his medication, his condition would deteriorate. (Tr. at 260, 379, 366, 408, 482, 493.)

Plaintiff was evaluated by Dr. Platner in 1999 and diagnosed with moderately severe to severe PTSD, dysthymia secondary to PTSD and a GAF of 55.  (Tr. at 163.) Dr. Bostwick testified the exacerbation of symptoms which was evident in 1999 would re-occur if Plaintiff were returned to that work setting.  (Tr. at 590.)  Thus, the factual basis for Dr. Bostwick's conclusion, that there is no indication Plaintiff's condition deteriorated after he retired and therefore his ability to work in 1999 remained a good indicator of his ability to function in the workplace after November 1999 (Tr. at 518), is not supported by the evidence.   Finally, Dr. Bostwick admitted it was not uncommon for someone with PTSD to downplay their symptoms because of emotional detachment and that certain events could trigger an exacerbation of symptoms.  (Tr. at 521.) Thus, based on Dr. Bostwick's testimony, there is no evidence to support the ALJ's opinion Plaintiff's condition was non-severe and/or that he was capable of returning to his past relevant work at Seattle Metro.   At step five, the vocational expert testified that if Plaintiff were prone to angry outbursts with a supervisor several

times a year or on a monthly basis with a coworker, such behavior would be a detriment to successful work.  (Tr. at 561.)

Case law requires an immediate award of benefits when,

> (1) [there has been a failure] to provide legally sufficient reasons for rejecting [a medical opinion], (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000), citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  The court has some flexibility in determining whether to remand for an immediate award of benefits or for additional administrative proceedings. *Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003).  In light of the vocational experts' testimony about workplace conduct, an immediate award is deemed appropriate. Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 9**) is **GRANTED;** the captioned matter is **REMANDED** for an immediate award of benefits.

2.    Defendant's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

3.    Defendant's Motion to file over-length brief **(Ct. Rec. 12)** is **GRANTED.**

4.    Any application for attorney fees shall be filed by separate motion.

5.    The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be

**CLOSED.**

        DATED May 17, 2006.

                        S/ CYNTHIA IMBROGNO
                 UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 13